# In the United States Bankruptcy Court for the Southern District of Georgia
## Savannah Division

FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By lbarnard at 12:09 pm, Sep 12, 2011

In the matter of: )
)  Chapter 11 Case
HSD PARTNERS, LLC )
)  Number 10-40295
        *Debtor* )

## MEMORANDUM AND ORDER

Debtor filed its Chapter 11 case on February 7, 2010. On September 3, 2010, Debtor filed its first proposed Plan and Disclosure Statement. Debtor's latest Amended Plan (the "Plan") was filed on May 26, 2011. Dckt. Nos. 146, 154. After multiple hearings, a Disclosure Statement was approved and the Plan was disseminated for balloting by creditors. The hearing on confirmation was conducted July 26, 2011. At the hearing, the sole remaining objection to confirmation was filed by Community West Bank ("CWB"). All other objections to confirmation were withdrawn or were not prosecuted at the hearing. Based on the entire record, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

As previous orders of this Court have detailed, Debtor is a construction equipment rental company which has been in business for a number of years. Debtor purchased the business in 2005. As majority owner, Harry B. Gloss III has managed the

AO 72A
(Rev. 8/82)

business with his wife, Sheree D. Gloss, since that time. Debtor owes $487,000.00[1] to CWB, of which $200,000.00 is secured. Debtor's Amended Plan, Dckt. Nos. 146, 154, provides that CWB's $200,000.00 secured claim would be included in Class 3 and would be paid over a twelve year period at 5.25 percent per annum with monthly payments of $1,874.96. CWB's unsecured claim would be included in Class 7 and would receive a pro rata distribution of 32.24 percent over a period of ten years. Ballots cast on the issue of confirmation revealed that CWB, the Class 3 creditor, rejected the Plan. Accordingly, the Plan cannot be confirmed under the provisions of 11 U.S.C. § 1129(a)(8).

CWB filed its Objection to Confirmation of Plan (the "Objection"), Dckt. No. 157, on July 15, 2011, objecting to the Plan on numerous grounds. The Court will now address CWB's contentions from the Objection and the hearing, together with Debtor's responses, on three main points.

CWB argues that:

1) The Plan contains no provisions for the systematic replacement of collateral as it wears out. The collateral was not new at the time the loan proceeds were advanced, and the twelve year amortization period of the Plan payments CWB would receive would extend the original contract maturity date from 2015 to 2023. CWB argues that the proposed interest rate is

---

[1] Except where the precise number is material, I will utilize rounded or approximate numbers throughout this opinion.

2

unreasonably low, and that proposed plan payments are too low to offset depreciation of the CWB collateral. *See* CWB's Objection to Confirmation of Plan, Dckt. No. 157, ¶ 4.

2) The Plan is not feasible based on Debtor's performance to date as set forth in Debtor's Monthly Operating Reports, and Debtor's failure to timely file accurate Monthly Operating Reports evidences Debtor's inability to manage its affairs and effectively reorganize. *See* Id. at ¶ 5, 6.

3) The Plan violates the absolute priority rule, thus prohibiting a cramdown confirmation pursuant to 11 U.S.C. § 1129(b)(2)(C)(ii). *See* Id. at ¶ 7.

In response, Debtor argues:

1) The collateral being utilized in its business is regularly repaired and maintained as the need arises. Debtor does concede that because of the low demand for certain types of equipment, the collateral may not be maintained or repaired on a routine basis if the equipment's state of disrepair does not affect the company on the revenue side. Ultimately, however, Debtor asserts that all equipment is being adequately maintained in order to protect CWB.

2) Its Monthly Operating Reports show that Debtor is operating at a level which enable it to make all future payments under the Plan. Thus, Debtor contends that the Plan is feasible.

3) A $500.00 contribution of new value from the principal of the Debtor, Harry B. Gloss III, as Managing Member, and Sheree D. Gloss will satisfy the new value exception to the absolute priority rule.

## CONCLUSIONS OF LAW

To confirm a plan of reorganization, a debtor has the burden of proving each element of 11 U.S.C. § 1129(a) and (b). In re Steedley, 2010 WL 3528599 (Bankr. S.D. Ga. August 27, 2010); In re New Midland Plaza Associates, 247 B.R. 877 (Bankr. S.D. Fla. 2000). Because I find that Debtor has not carried its burden on the first two issues raised by CWB, I will not address the new value exception issue which remains a matter of great uncertainty within the bankruptcy community. *See* Bank of Am. Nat'l Trust & Savings Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 462 (1999) ("No holding of this Court ever embraced the new value exception."); In re Bryson Props, XVIII, 961 F.2d 496, 504 (4th Cir. 1992); In re Global Ship Sys., LLC, 391 B.R. 193, 208 (Bankr. S.D. Ga. 2007) (questioning, without determining, the continued viability of the new value exception); In re Homestead Partners, Ltd., 197 B.R. 706, 711 (Bankr. N.D. Ga. 1996). *But see* In re Multiut Corp., 449 B.R. 323, 354 (Bankr. N.D. Ill. 2011) (recognizing the new value exception to the absolute priority rule).

Present Value Objection

Debtor has failed to carry its burden of proving that a 5.25 percent interest rate and a twelve year amortization is sufficient to meet the requirements of 11 U.S.C. §

1129(a)(7). Although there is no dispute over the amount of the secured component of CWB's claim, CWB has objected to the 5.25 percent interest rate. Debtor has not introduced any evidence that that rate is adequate to provide CWB with the present day value of its claim under existing precedent. Such a showing would require Debtor to establish that an appropriate rate of interest is being paid given the opportunity costs of the loan, the risks involved, the risk of default, the quality of the security, the payout period, and the circumstances of the estate. *See* In re Gillikin, Case No. 09-60178 (March 3, 2011) (Davis, J.); *see also* In re Del-A-Rae, Inc., 448 B.R. 303 (Bankr. S.D. Ga. 2011).

It is important to note that Debtor's plan provides a seven percent rate of interest to a holder of a claim secured by real estate which, by its nature, is not ordinarily subject to erosion in value to the extent that construction equipment is. I find that Debtor has not provided assurance that CWB will, over the life of the Plan, receive the full present day value of its secured claim. Debtor has failed to prove that 5.25 percent is an adequate rate of interest and failed to show that a twelve year amortization without adequate provisions for replacement of collateral is sufficient to protect CWB's interest. Thus, I find that the Plan fails to comply with 11 U.S.C. § 1129(a)(7).

Feasibility Objection

Debtor, as plan proponent, has the burden to show that the Plan is feasible under 11 U.S.C. § 1129(a)(11). In re SM 104 Ltd., 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993). On April 1, 2011, this Court entered an Order on CWB's Motion for Relief from Stay

which is incorporated herein by reference. Dckt. No. 135. In that order, I found that Debtor's Plan, Dckt. No. 103, had a reasonable possibility of being confirmed within a reasonable time because of the projected revenue and the reduction in forward-looking expenditures. At the time that Order was entered, Debtor was projecting a seventeen percent increase in gross sales in 2011 over 2010 which would result in gross sales of slightly over $406,000.00. *See* Exh. D-1A. In 2010, the actual sales were approximately $347,000.00. *See* Exh. D-1A. Based on the first two months operation, this Court concluded that although the seventeen percent increase might be overly optimistic, Debtor had improved its performance in the first two months of 2011 over a comparable period in 2010. Now, however, the evidence reveals that through the first six months of 2011, Debtor has fallen far short of its projected performance, taking in substantially less than the $200,000.00 to date that would be necessary to meet its projected gross annual sales of $406,000.00. *See* Debtor's 2011 Monthly Operating Reports, Dckt. Nos. 129, 133, 139, 170, 171.[2]

Debtor's Monthly Operating Reports for April and June 2011[3] were not timely filed, and thus neither the Court nor CWB's counsel had an extended period of time to review them. Nonetheless, testimony at trial revealed that the reports were seriously flawed. For example, Debtor reported total receipts for June 2011 of approximately

---

[2] Debtor's monthly sales for the first six months of 2011(excluding May 2011, for which an operating report has not been filed) total $130,465.71. Even adding a generous $30,000 to that number to estimate May's sales, that amount does not come close to the $200,000.00 needed to meet Debtor's projected sales. Indeed, sales of $160,465.71 would not allow Debtor to reach its 2010 sales of $347,000.00 without meaningful improvement in the second half of the year.

[3] The Monthly Operating Report for May 2011 remains unfiled.

$30,000.00: $11,400.00 of cash sales and $18,752.00 presumably attributable to "receipts" from accounts receivable.[4] Exh. CWB-1, Line 2(a) and (b). Upon further examination of Attachment 1 to CWB-1, however, it is clear that Debtor only collected approximately $8,900.00 on outstanding accounts receivable during the month. As it turns out, Debtor has reported as total receipts a combination of cash and accounts receivable *when billed*, rather than when paid. Accordingly, the report of $30,000.00 in total receipts for June of 2011 has overstated receipts by approximately $10,000.00, the difference between receivables collected and receivables billed for the period in question. This procedure was apparently used throughout the case and makes reliance on any particular figures in the reports hazardous at best.

Still, Debtor projects that it needs approximately $28,125.00 per month in gross receipts in order to fund the Plan and succeed.[5] Debtor has clearly failed to reach that level for the first six months of 2011. Even reviewing its performance for the entire post-petition period, the picture is no better. Debtor's Monthly Operating Report for June 2011, Dckt. No. 170, states that total receipts from the inception of the case through June 30, 2011, are $490,547.83 and Debtor reports $29,044.84 in accounts receivable that have yet to be

---

[4] Debtor incorrectly placed this figure on the "Net Cash Sales" line of Debtor's Monthly Operating Report for June 2011. Based on evidence at trial, it appears that Debtor intended to include it on the Accounts Receivable line directly below.

[5] Debtor's Amended Disclosure Statement, Dckt. No. 144, explains that Debtor's average monthly income for 2011 is $25,075.00 and states that Debtor needs an additional $3,050.00 in order to meet the proposed Plan payments. The Court remains unconvinced that these figures are accurate as they originate with the flawed Monthly Operating Reports; however, for purposes of determining whether Debtor has met its burden, the Court will attempt to utilize the numbers Debtor has provided.

collected.[6] I therefore conclude that its cash receipts for the period actually total $461,502.99 net or $27,486.76 per month. In light of the fact that Debtor has cut every conceivable expense, including dropping health insurance coverage for its employees and allowing Mrs. Gloss to work without pay, this number is insufficient for the Court to conclude that Debtor can fund its obligations under this Plan on a forward looking basis.

Even worse, Debtor's forward looking cash needs do not include any reserve fund or monthly or annual amount set aside for the replacement of equipment as it becomes broken, irreparable or obsolete. To the extent that equipment is not repaired on a timely basis or replaced when it can no longer be repaired, CWB's collateral is being diminished, and the Plan makes no provision to protect CWB against that possibility. The projected cash needs are also based on 5.25 percent over twelve years which, as earlier noted, Debtor has failed to establish as reasonable. Any increase in interest or reduction in term to make the Plan confirmable would only serve to place Debtor in a worse negative cash flow position as the monthly payments would increase above the proposed amounts.

Debtor has failed to establish that it can further reduce its expenditures, has not provided an adequate interest rate to CWB nor a short enough amortization, and has not funded the replacement of equipment as it wears out. Mr. and Mrs. Gloss have made a valiant effort to make this Plan work and have sacrificed much along the way. However, the

---

[6] Debtor's accounts receivable amounts on each Monthly Operating Report are internally inconsistent, and thus it is difficult for the Court to determine precisely which figure to use. However, based on evidence at trial, the $29,044.84 figure appears to be accounts receivable that have yet to be collected.

fact remains that they simply have not, and cannot show that at this time they can operate at a positive cash flow level, much less afford whatever higher payments would be necessary to fund the Plan's shortcomings. Therefore, Debtor has not met its burden, and the Plan cannot be confirmed.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the confirmation of the Plan is DENIED. The Court will hereafter determine whether to dismiss or convert the case to Chapter 7 after affording Debtor, creditors and the United States Trustee ten (10) days opportunity to comment on which remedy is in the best interest of creditors and the estate.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This ___ day of September, 2011.